IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 1:18-cr-209 |
| | ) |
| REYNALDO B. REGIS, | ) |
| | ) |
| Defendant. | ) |

FILED IN OPEN COURT
MAY 11 2018
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

STATEMENT OF FACTS

The United States and the defendant, REYNALDO B. REGIS, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. From in or about August 2006 until November 3, 2016, the defendant, Reynaldo B. Regis, was employed by multiple government contracting firms. Other than a two-year period from approximately 2010 through 2012, REGIS was assigned by his employers to do work for the Central Intelligence Agency (CIA), which is located in Langley, Virginia, within the Eastern District of Virginia.

2. The CIA is a United States government intelligence agency responsible for, among other things, collecting information that reveals the plans, intentions, and capabilities of the United States' adversaries and the bases for their decisions and actions, as well as conducting clandestine actions, at the direction of the President and his authorized designees, designed to preempt threats and achieve the United States' policy objectives.

3. During his tenure at the CIA, REGIS held a United States government security clearance that granted him access to classified United States government information. In particular,

REGIS held a Top Secret security clearance with Sensitive Compartmented Information (SCI) access.

4. Persons with security clearances granting them access to classified information are required to properly store and secure classified information by Title 18, United States Code, Sections 793 and 1924, and applicable rules, regulations, and orders.

5. Classified information is defined by Executive Order 13526 as information in any form that: (1) is owned by, produced by or for, or under the control of the United States government; (2) falls within one or more of the categories set forth in E.O. 13526; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security. Where such unauthorized disclosure reasonably could be expected to cause "damage" to the national security, the information is classified as "Confidential." Where such unauthorized disclosure reasonably could be expected to cause "serious damage" to the national security, the information is classified as "Secret." Where such unauthorized disclosure reasonably could be expected to cause "exceptionally grave damage" to the national security, the information is classified as "Top Secret."

6. Pursuant to E.O. 13526, a person may gain access to classified information only if a favorable determination of eligibility for access has been made by an agency head or an agency head's designee, the person has signed an approved nondisclosure agreement, and the person has a "need-to-know" the information.

7. "Need-to-know" means a determination by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized government function.

8. Classified information being accessed may not be removed from the controlling agency's premises without permission.

9. Throughout his assignment to the CIA, REGIS entered into various agreements with the United States regarding the protection and proper handling of classified information. Examples of these agreements include:

    a. On October 3, 2006, REGIS signed a Sensitive Compartmented Information Nondisclosure Agreement[1], in which he agreed, in pertinent part, as follows:

- I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.

- I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage a foreign nation.

- In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including provisions of Sections 793, 794, 798, and 952, Title 18, United States Code[.]

- I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials.

---

[1] REGIS signed the same or substantially similar agreements on at least ten other occasions between 2006 and 2013.

b. Also on October 3, 2006, REGIS signed a Secrecy Agreement[2], in which he agreed, in pertinent part, as follows:

- I understand that in the course of my employment or other service with the Central Intelligence Agency I may be given access to information or material that is classified or is in the process of a classification determination in accordance with [E.O. 13526 or other orders] that if disclosed in an unauthorized manner would jeopardize intelligence activities of the United States Government. I accept that by being granted access to such information or material I will be placed in a position of special confidence and trust and become obligated to protect the information and/or material from unauthorized disclosure.

c. On November 3, 2016, REGIS signed a Security Exit Form, in which he agreed, in pertinent part: "I give my assurance that there is no classified material in my possession, custody, or control at this time."[3]

10. Throughout his assignment to the CIA, REGIS had regular access to classified information relating to CIA programs, operations, methods, sources, and personnel. REGIS's job description included researching persons in classified databases. Although REGIS only was authorized to search the names that were assigned to him, throughout his time at the CIA REGIS conducted unauthorized searches of unassigned persons in classified databases. REGIS's unauthorized searches returned classified information regarding highly sensitive intelligence reports.

---

[2] REGIS signed the same or substantially similar agreements on at least four other occasions between 2006 and 2013.
[3] REGIS signed the same or a substantially similar form on April 2, 2010.

11. Throughout his assignment to the CIA, REGIS maintained a number of notebooks that he utilized in his workspace. REGIS would often write in these notebooks while sitting at his desk and viewing classified information on his computer monitor. REGIS also would often take his notebook out of his workspace in his personal bag and to his residence, then bring the notebook back with him the next time he returned to the CIA.

12. On November 3, 2016, federal search warrants were executed on REGIS's residence and vehicle. In total, the searches recovered approximately 60 notebooks. The CIA conducted a preliminary review and determined that there were several hundred instances of classified information represented in the seized notebooks, much of which were classified as Secret, meaning unauthorized disclosure of the information could cause "serious damage" to the national security. The classified information contained in the notebooks included information relating to highly sensitive intelligence reports.

13. The notebooks containing classified information were removed from REGIS's workplace at the CIA, within the Eastern District of Virginia. Neither REGIS's residence nor his vehicle are approved for the storage of classified information.

14. Also on November 3, 2016, REGIS participated in a voluntary, non-custodial interview with two special agents of the Federal Bureau of Investigation (FBI). During the course of the interview, REGIS acknowledged that he understood that a failure to be truthful when speaking to FBI special agents is a violation of law.

15. During the course of the interview, REGIS falsely stated to FBI special agents that (a) he never wrote down any classified information in his notebooks; and (b) he never removed any classified information from his workspace at the CIA. REGIS made these statements willfully, and with knowledge that they were false.

16. This statement of facts includes those facts necessary to support the defendant's guilty plea. It does not include each and every fact known to the defendant or to the government and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

17. The actions of the defendant, as recounted above, were in all respects knowing, voluntary, and intentional, and were not committed by mistake, accident or other innocent reason.

Tracy Doherty-McCormick
Acting United States Attorney

By: _____
Danya E. Atiyeh
Assistant United States Attorney

Scott Andrew Claffee
Trial Attorney
U.S. Department of Justice
National Security Division

**Defendant's Signature:** After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 13 APRIL, 2018

Reynaldo B. Regis
Defendant

**Defense Counsel Signature:** I am Reynaldo B. Regis's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 4/18/2018, 2018

John Zwerling, Esq.
Cary Citronberg, Esq.
Counsel for the Defendant