IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 1:18cr209 (LO) |
| REYNALDO REGIS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING POSITION

COMES NOW, the defendant, Reynaldo Regis, and in accordance with 18 U.S.C. Section 3553(a) and Section 6A1.2 of the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), respectfully submits to this Honorable Court his position with respect to sentencing. Mr. Regis submits that a sentence of probation, at the low end of the recommended guideline range, is appropriate. In further support of his position, Mr. Regis offers the following:

### I. USSG Calculations

The defense agrees that the probation office has correctly calculated the guideline range at 0-6 months. The defense has no dispute with respect to the calculated guideline range.

### II. 3553(a) Factors

The Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, require district courts to consider both the U.S.S.G. range and all of the factors contained in 18 U.S.C. Section 3553(a) when calculating a criminal defendant's ultimate sentence. District courts are instructed first to correctly calculate the guideline range and then consider the factors in Section 3553(a) to determine an appropriate sentence.

**1. Avoiding Unwarranted Sentencing Disparities**

In the three cases most analogous to this one, the defendant has received penalties less severe than the government is requesting in this case.[1] In two of them, the defendant pleaded guilty only to a misdemeanor, and in the third, in which the defendant pleaded guilty to a 1001 violation and faced a similar 0-6 sentencing range, he was pardoned before sentencing and therefore no criminal conviction resulted.

General David Petraeus pled guilty in June 2015 to one misdemeanor count of violating 18 U.S.C. § 1924. It was undisputed at sentencing that General Petraeus had knowingly and deliberately made false statements to federal investigators. See Factual Basis ¶¶ 28, 32-33, United States v. Petraeus, No. 3:15-cr-47 (W.D.N.C. Mar. 3, 2015). General Petraeus disclosed classified information intentionally and for no public purpose. General Petraeus gave his biographer eight black notebooks filled with highly classified documents and information, telling her "there's code word stuff in there." Id. ¶ 22. Despite these facts, General Petraeus was permitted to plead to a misdemeanor and was not sentenced to prison, receiving instead two years' probation (with no element of community service) and a fine.

The prosecution of National Security Advisor Sandy Berger is also instructive. He also pled guilty to violating 18 U.S.C. § 1924 by unlawfully removing classified documents and handwritten notes -- some of which he destroyed -- from the National Archives on two occasions. Factual Basis for Plea ¶¶ 3-4, United States v. Berger, No. 1:05-mj-175 (D.D.C. Apr. 1, 2005). When contacted by the National Archives and Records Administration about the missing documents, Mr. Berger did not disclose that he had removed the documents and later made false statements about them. Id. ¶ 6. Like the defendant, however, Mr. Berger later corrected his false

---

[1] The government's request for a sentence involving any incarceration is troubling and disappointing, for reasons that may be later expressed either orally or in a supplemental filing.

statement to the government and accepted responsibility. *See id*.; Sentencing Memorandum, Berger, at 17. He was sentenced to two years' probation, 100 hours of community service, a fine, and a three-year prohibition on access to classified material.

In the case of General James Cartwright, according to the Statement of Offense, he provided and confirmed Top Secret//SCI classified information to two national news reporters, and the information was ultimately published in their respective national newspapers. *U.S. v. Cartwright*, 1:16cr188 (D.D.C.). The information "could reasonably have been expected to result in exceptionally grave damage to the national security of the United States." See Statement of Offense ¶4. And then when questioned by the FBI about the disclosures, he lied to the FBI. Unlike the above two defendants, he was required to plead guilty to a felony--a 1001 violation--but unlike Mr. Regis, was not required to also plead guilty to violating 18 U.S.C. § 1924. Before his sentencing, he was pardoned by President Obama, and therefore faced no criminal consequences of any type.

To sentence Mr. Regis to a sentence greater than these individuals for his conduct would send the wrong message, which was captured by the press in reporting this case. The Washington Examiner, in writing an article about this case, noted the following:

> The treatment of lower-ranking government employees and contractors generally is harsher than the penalties given to more famous officeholders.
>
> Earlier this year, former FBI agent Terry Albury became the second alleged journalistic source prosecuted by the Trump administration for mishandling classified information. Albury, who pleaded guilty, faces between three and five years in prison. Comey and former FBI Deputy Director Andrew McCabe, meanwhile, face no charges for allegedly mishandling classified information and lying to investigators about a media disclosure, respectively.

3

"The short answer is yes, there is a double standard," prominent national security defense attorney Nancy Hollander told the *Washington Examiner* after Albury's plea. "The higher the rank, the lower the sentence."[2]

A sentence at the low end of the guidelines is at least as appropriate for Mr. Regis as it was for those possessing greater wealth and power than he does, and a sentence of incarceration will reflect the message published by the press.

**2. Background of the Defendant**

The defendant honorably served in the United States military for 25 years before his retirement. After his retirement, he worked in a related civilian capacity. He has devoted his entire life to the service of this country, and aside from his conduct in this case, his record is unblemished. Were it not for the fact that the guidelines already contemplate a sentence of probation, a departure would be appropriate under U.S.S.G. 5H1.11, which provides for a downward departure where the defendant's military service "distinguishes the case from the typical case covered by the guidelines." However, because the guidelines already contemplate a sentence of probation, the Court cannot depart below the low end of the guidelines.

With respect to charitable service, Mr. Regis, a devout man, has contributed more than any other defendant undersigned counsel has represented. An incomplete sample of some of his current charitable service of listed below, and letters from those witnessing his service are attached as Exhibit A:

**A. <u>Veterans of Foreign Wars (VFW) Post 5471, Oxon Hill, Maryland (Membership 120+-)</u>**
VFW Mission: Serve the veterans, Patriotism, Benefits Education and protection
Position:      Commander (**Average 8 Hrs** per Week)  (Mbr since 2013)
Reference:    Jay Cabacar, Former Commander of the Post
What Mr. Regis does-

---

[2] https://www.washingtonexaminer.com/news/ex-cia-contractor-pleads-guilty-to-taking-classified-information-home.

4

          Administrative work, correspondence, helps balance the budget
          Recruitment and retention
- Coordinate Memorial Services and assistance for families of deceased members. We have had 2 members passed away recently, 5 last year)
- VFW Color Guard, perform as invited to formal occasions….there were 5 Color Guard performances last year)

**B. Fleet Reserve Association (FRA) Branch 4, Oxon Hill, Maryland (Membership 130+-)**

FRA Mission:   Organization of Seagoing Services - Navy, Coast Guard, Marine Corps Vets
                Help veterans understand their benefits. Help family members.
                Patriotism programs, Youth Programs etc.
Location:       7500 Livingston Rd, Oxon Hill, MD. The Vet Center is in the basement.
Position:        Treasurer, Building Maintenance, Property custodian (Mbr since 2013)
                (**Average 16 Hrs per week** – frequent visit to the center at least 3xweek)
Reference:     Arthur Caliguiran, President
What Mr. Regis does: Balance the budget (approx. 150K)
                Property Custodian of about 20k worth of property
                Building Maintenance (open and close the basement every use)
                The building is used for Youth Martial Arts practice and Youth Dance Practice 2 per week.
                He is also working with the VA to make the Branch 4 Center a VA hub of information for minority veterans in the area.

**C. ANCOP Foundation USA /Couples For Christ (Membership is Nationwide and international)**

ANCOP/CFC Mission: ANCOP stands for "Answering the Cry of the Poor," a catholic charity organization meant to raise funds to send underprivileged children to school mainly in the Philippines and then instill values formation into their upbringing. Child Sponsorship Program.
                CFC is a Church Ministry that focuses on Marriage and Family Life.
What he does: He was the regional manager responsible for the program in MD, VA, DC, DE.
                He is currently the HouseHold Leader for 5 couples. Does weekly meetings and Bible Study. Average time devoted is about **4 Hrs per week**. Member since 2006. POC is Nap Curameng, Unit Leader.

**D. St. Columba Catholic Church, Oxon Hill, Maryland**

He remains active as an Usher, Eucharistic Minister and volunteer at church activities. He helps in the kitchen, preparing and cleaning up, during "Coffee and Donuts Sunday" and during "Soup Kitchen" this season of Lent. Average time devoted is about 4 hrs per week. POC is Fr. Gary Villanueva.

### 3. Promote respect for the law and provide just punishment

As a convicted felon, Mr. Regis has already been more harshly punished than the various comparably situated defendants listed above. In addition to losing his constitutional rights as a result of the felony conviction, he also lost his security clearance in connection with this case and, by extension, his job. And unlike the various comparably situated defendants listed above, Mr. Regis did not rise high enough in the military ranks to secure other militarily related civilian work, nor the speaking engagements or other opportunities the above listed individuals were able to secure after their prosecutions. His case resulted in substantial media exposure, which in addition to exposing him to severe reputational harm beyond that faced by most defendants, makes it more difficult to secure other employment. His case has therefore visited very substantial financial penalties on an individual who devoted his entire life to the United States. These varying punishments are more than sufficient to accomplish the purposes of sentencing, and any further punishment would be much greater than necessary to accomplish the purposes of 3553(a).

### III.  Conclusion

The defendant respectfully requests the Court impose a guideline sentence of probation.

Respectfully Submitted,

  /s/ John Zwerling
Cary Citronberg
John Zwerling
Zwerling/Citronberg P.L.L.C.
114 North Alfred Street
Alexandria, VA 22314
703-684-8000 (office)
703-684-9700 (fax)
jz@zwerling.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 26th day of October, 2018 a copy of the foregoing was filed by ECF, which shall serve notice upon all parties.

                                /s/ John Zwerling
                              Cary Citronberg
                              John Zwerling
                              Zwerling/Citronberg P.L.L.C.
                              114 North Alfred Street
                              Alexandria, VA 22314
                              703-684-8000 (office)
                              703-684-9700 (fax)
                              jz@zwerling.com